**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STACEY AND FRANCESCO
GIORDANO, on behalf of themselves and
the putative class,

            Plaintiffs,

     v.

SAXON MORTGAGE SERVICES, INC.
and BAYVIEW LOAN SERVICING, LLC,

            Defendants.

Civil Action No. 12-7937 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter is one of the many cases across the country dealing with the loan modifications provided under the Home Affordable Modification Program ("HAMP"), codified at 12 U.S.C. § 5201 *et seq*. In this putative class action, Plaintiffs Stacey and Francesco Giordano (collectively, "Plaintiffs" or the "Giordanos") allege Defendant Saxon Mortgage Services, Inc. ("Defendant" or "Saxon") failed to permanently modify their loan in breach of its Trial Period Plan ("TPP") with Plaintiffs.

    Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Def.'s Br., ECF No. 33-3.) Plaintiffs opposed the motion (Pls.' Opp'n, ECF No. 34) and Defendant replied (Def.'s Reply, ECF No. 35). The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, and other good cause shown, Defendant's Motion to Dismiss is DENIED.

I.      **Background and Procedural History**

A.      **Background**[1]

The Giordanos own a home in Robbinsville, New Jersey. (Am. Compl. ¶ 4, ECF No. 30.) After Plaintiffs experienced difficulties making their monthly mortgage payments, they sought a permanent HAMP loan modification from Saxon, a mortgage bank and home mortgage servicer. (*Id.* ¶¶ 4-5.) On or about August 4, 2009, Plaintiffs entered into a TPP with Defendant. (*Id.* ¶ 10.) On August 13, 2009, Saxon counter-signed and executed the TPP as "attorney-in-fact" for Morgan Stanley Capital Holdings, LLC ("Morgan Stanley"), binding itself and the lender to the terms of the TPP. (*Id.* ¶ 11.)

Section 1 of the TPP required Plaintiffs to make certifications and representations about the information they provided to Saxon and to agree to credit counseling, if requested by Saxon. (*Id.* ¶ 85) (TPP § 1, Scherr Cert., Ex. 3.) Section 2 of the TPP required Plaintiffs to make three trial payments in the amount of $2,557.50 on or before August 1, September 1, and October 1, 2009. (Am. Compl. ¶ 12.) (TPP § 2.) The TPP specifically states: "If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect a new payment amount and waive any unpaid late charges accrued to date." (Am. Compl. ¶ 13.) (TPP § 3.) The TPP further provides that it is not a loan modification and

---

[1] The following facts are drawn from the Complaint, unless noted otherwise, and are taken as true for the purposes of this Opinion. As a general rule, when the court is ruling on a motion to dismiss, it may only consider the pleadings. *Angelastro v. Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985). "However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). Defendant attached several documents to its motion, including the TPP, which is the basis of Plaintiffs' Amended Complaint. The Court will consider the TPP in deciding this motion but declines to consider the remaining documents, which are either irrelevant to the adjudication of this motion or would force the Court to convert this motion into one for summary judgment.

> the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I received a fully executed copy of the Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents *if* I fail to meet any one of the requirements under this Plan.

(Am. Compl. ¶ 14.) (emphasis supplied.)

Plaintiffs complied with all of the conditions required for modification, including making all three trial payments, making sure their representations remained true and accurate, and remaining qualified for a permanent modification throughout the term of the TPP. (Am. Compl. ¶¶ 48-49.) Indeed, in December 2009, they received correspondence from Defendant stating they had completed the TPP phase and "begun [their] Home Affordable Final Modification." (*Id.* ¶ 50.) Notwithstanding Plaintiffs' compliance with the TPP and Defendant's acknowledgment thereof, Defendant did not provide Plaintiffs with a permanent loan modification. (*Id.* ¶ 51.)

In December 2009 and February 2010, Plaintiffs received additional correspondence from Defendant extending their review period and informing Plaintiffs that the U.S. Treasury had implemented new guidelines that may impact their request for a permanent modification. (*Id.* ¶¶ 52, 54.) During the extended review, Plaintiffs were still required to make monthly payments to Saxon to maintain their eligibility for a HAMP modification. (*Id.* ¶ 54.) The correspondence also explained that Plaintiffs were at risk of losing their eligibility for failure to "submit all required documentation." (*Id.* ¶ 52.) Plaintiffs allege they did submit all required documents, but resubmitted the paperwork in light of this correspondence. (*Id.* ¶ 53.)

On April 7, 2010, six months after Plaintiffs' TPP should have concluded, Plaintiffs received correspondence denying permanent modification of their loan for failure to make all trial payments, even though they had done so. (*Id.* ¶¶ 55-56.) After Plaintiffs inquired about the denial, on April 27, 2010, Defendant admitted that Plaintiffs had made all trial payments through April 2010 but were removed from the program in error. (*Id.* ¶ 57.) The correspondence, however, went on to affirm the

3

denial based on the cash flow the investor would likely receive if the loan were modified compared to foregoing modification. The correspondence also stated that Plaintiffs were "never eligible for HAMP," despite being previously advised by Saxon that they were eligible. (*Id.* ¶ 58.)

Because of Saxon's denial, Plaintiffs "fell further behind on their mortgage, suffered damage to [their] credit," and suffered additional, consequential damages stemming from Saxon's alleged breach. (*Id.* ¶ 59.) According to Plaintiffs, Saxon's internal policies, or lack thereof, allowed it to enter into TPPs with New Jersey homeowners and breach the TPPs "as part of a corporate-wide scheme to drain payments from homeowners while having no intention of actually modifying the loans." (*Id.* ¶ 60.)

## B.     Class Allegations

Plaintiffs allege jurisdiction based on the Class Action Fairness Act, 28 U.S.C. § 1332(d) *et seq.*, and bring this action pursuant to Rules 23(a), (b)(2), and (b)(3), on behalf of themselves and a Class consisting of:

> All New Jersey residential mortgage borrowers whose loans have been serviced by Saxon and who: (i) entered into a Trial Plan Contract with Saxon that is substantially similar to that of Plaintiffs' Trial Plan Contract and that Saxon counter-signed and returned to borrowers; (ii) made all monthly payments as required under their respective Trial Plan Contracts; and (iii) did not receive a permanent modification by the Modification Effective Date set forth in their respective Trial Plan Contracts.

(*Id.* ¶¶ 6, 61.)

"All members of the Class have been subject to and affected by a uniform course of conduct by Defendant that was designed to avoid issuing permanent loan modifications" and collect various fees, while avoiding the expense of modifying the loans. (*Id.* ¶ 64.)

## C.     Procedural History

On December 31, 2012, Plaintiffs brought various state law claims based on Defendant's denial of their permanent loan modification and alleged non-compliance with the HAMP rules, servicer handbook, and other documentation governing HAMP. (Compl. ¶ 99, ECF No. 1.)

Defendant moved to dismiss and the Court issued a Memorandum Opinion and Order dismissing the Complaint with leave to amend. (Mem. Op. & Order, ECF Nos. 28-29.) The Court held that: (1) Plaintiffs are collaterally estopped from re-litigating the terms of Saxon's in-house (non-HAMP) modification, including the capitalized fees thereunder, and (2) Plaintiffs did not have a right of action under HAMP for claims solely based on violations of HAMP guidelines and other documentation. (Mem. Op. at 20-22.) Consequently, the Court did not reach the merits of Plaintiffs' state law claims but acknowledged they may be viable causes of action. (*Id.* at 21 n.12, 22 n.13.)

Plaintiffs timely filed their Amended Complaint, which seeks relief based on Defendant's alleged deceptive practices during the loan modification process and breach of the TPP. Specifically, Plaintiffs seek to hold Defendant liable under the following state law theories: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1 *et seq.*; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; and (4) promissory estoppel.

## II.   **Standard of Review**

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a '"plausible claim for relief."'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III.    Analysis

Defendant moves to dismiss Plaintiffs' claims based on several theories. Defendant first asserts that Plaintiffs' claims are impermissible under HAMP and, second, as a government contractor, it has sovereign immunity. In the alternative, Defendant moves pursuant to Rule 12(b)(6) to dismiss all of Plaintiffs' claims for failure to state a claim upon which relief can be granted. For the following reasons, Defendant's motion to dismiss is denied.

### A.    Claims Independent from HAMP

Unlike the original Complaint, the Amended Complaint is based on independent state law claims centering on Defendant's alleged breach of the TPP, not a breach of the HAMP statute, 12 U.S.C. § 5201 *et seq.*, its guidelines, or the HAMP Servicer Participation Agreement. The Third Circuit, in an non-precedential opinion, has stated that HAMP does not provide a private right of action. *See Sinclair v. Citi Mortg. Inc.*, 519 F. App'x 737, 739 (3d Cir. 2013). However, recent decisions in this Circuit have not construed that statement as totally precluding plaintiffs from pursuing their claims under state law. *See, e.g., Lia v. Wells Fargo Bank*, No. 14-0752 (WJM), 2014 WL 2739348, at * 2 (D.N.J. June 17, 2014) ("*Sinclair* is neither binding nor on-point. *Sinclair* held only that HAMP lacks a private right of action. It did not hold that HAMP in any way precludes state law causes of action."); *Laughlin v. Bank of Am., N.A.*, No. 13-4414 (JAP), 2014 WL 2602260, at *7 n.7 (D.N.J. June 11, 2014). Accordingly, the Court rejects Defendant's assertion that Plaintiffs' claims are an "impermissible back-door effort to enforce HAMP Guidelines." (Def.'s Br. 8.)

### B.    Sovereign Immunity

Saxon maintains that it shares sovereign immunity with the United States because it was a government contractor following the directives of the United States when it denied Plaintiffs' permanent loan modification. (Def.'s Br. 10-12.) The defense asserted by Saxon was pronounced in *Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988), in which the Supreme Court held that a private military equipment supplier to the United States government could share in the government's

6

immunity from Federal Tort Claim Act product-liability claims. *Accord Carley v. Wheeled Coach*, 991 F.2d 1117, 1125 (3d Cir. 1993) (extending defense to non-military government contractors).

The defense has typically been applied in cases raising tort claims. *See Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67, 69-70 (3d Cir. 1990). Nevertheless, Saxon asks the Court to apply the defense in this case because "Plaintiffs' putative injuries principally stem from decisions made by the U.S. Government, not Saxon." (Def.'s Br. 11-12.) And, without citing any case law, Defendant asserts that the defense may be applied to contract claims. (Def.'s Reply 1.)

The Court declines to dismiss the Amended Complaint on this ground. Saxon has failed to provide any proof that it is a government contractor. Furthermore, Defendant has failed to provide any authority applying the defense in this context. And even if the Court was persuaded to apply the defense to Saxon, Saxon has failed to apply the *Boyle* test in its motion papers.

C.     **Count One: New Jersey Consumer Fraud Act ("NJCFA")**

For purposes of Rules 8(a) and 9(b), Plaintiffs have sufficiently pled deceptive acts and an unconscionable commercial practice by Saxon. Plaintiffs allege Saxon purposefully strung them along for months, letting Plaintiffs believe they would be eligible for a loan modification—when Saxon knew that they would not be—while continuously accepting trial payments after expiration of the trial period. (Am. Compl. ¶¶ 52-58, 75-76.) Put differently, but for Defendant's deception, Plaintiffs would not have entered into the TPP and would have avoided the fees, penalties, and other charges accrued while performing under the TPP. (*Id.* ¶¶ 77, 79.)

The NJCFA "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576 (2011) (citation omitted). The Act is "applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." *Lemelledo v. Benefit Mgmt. Corp.*, 150 N.J. 255, 264 (1997). Under the NJCFA, a plaintiff who establishes: "(1) an unlawful practice, (2) an 'ascertainable loss,' and (3) [causation], is entitled to legal and/or equitable relief, treble damages, and reasonable attorneys' fees,

7

N.J. [Stat. Ann]. 56:8-19." *Gonzalez*, 207 N.J. at 576 (citation omitted). The NJCFA defines an "unlawful practice" as

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged[.]

N.J. Stat. Ann. 56:8-2. The term "advertisement" is defined, in relevant part, as "the attempt . . . to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan." N.J. Stat. Ann. 56:8-1(a).

Defendant's primary argument is that Plaintiffs' NJCFA claim fails to allege unlawful conduct with the sale or advertisement of real estate and, therefore, it falls outside the ambit of the NJCFA. (Def.'s Br. 13, citing *Slimm v. Bank of Am. Corp.*, No. 12–5846 (NLH/JS), 2013 WL 1867035 (D.N.J. May 2, 2013).) In *Slimm*, the court dismissed the NJCFA claim because, among other things, the allegations were not premised on the sale or advertisement of plaintiffs' property but, instead, based on mortgage modifications. 2013 WL 1867035, at *14. The court's reasoning in *Slimm* is unpersuasive because it failed to consider the New Jersey Supreme Court's decision in *Gonzalez*, which held that "in fashioning and collecting on . . . a [post-foreclosure-judgment agreement involving an extension of credit]—as with any other loan—a lender or its servicing agent cannot use unconscionable practices in violation of the CFA." 207 N.J. at 587.

Other courts in this Circuit have applied the holding in *Gonzalez* to loan modifications, holding that unconscionable practices in connection with loan modifications fall within the ambit of the NJCFA. *See Laughlin*, 2014 WL 2602260, at *4-6 (considering the broad legislative intent of the NJCFA and holding that "a loan servicer's business practices during the loan modification process are covered by the CFA."); *Beals v. Bank of Am., NA*, No. 10–5427 (KSH), 2011 WL 5415174, at *17

8

(D.N.J. Nov. 4, 2011) ("Just as the post-judgment agreement was covered under the CFA, so too are the modifications here, which effectively operate as a subsequent performance on the original agreement. Therefore, plaintiffs have properly pleaded an 'unlawful purpose.'"). In light of the decisions in *Laughlin* and *Beals*, the Court denies Defendant's request to dismiss Count One on this ground.

Furthermore, Plaintiffs have alleged ascertainable loss as either (1) the difference between money spent to obtain a permanent modification and the difference in value between their applied-for permanent modification and the value of the loan they have now, or (2) the difference in value between their applied-for permanent modification as of the Modification Date and the cost of payments they continued to make once the Modification Effective Date passed. (Am. Compl. ¶ 78.) To survive Rule 9(b), Plaintiffs need not plead the exact dollar amount of their loss. *In re Gerber Probiotic Sales Practices Litig.*, No. 12-835, 2013 WL 4517994, at \*5 n.4 (D.N.J. Aug. 23, 2013). Instead, plaintiffs must provide enough specificity to give defendants notice of their possible damages. *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 8-1057, 2008 WL 5381227, at \*7 n.3 (D.N.J. Dec. 17, 2008). The allegations provide enough specificity to give Saxon notice of Plaintiffs' damages.[2]

Accordingly, Defendant's motion to dismiss Count One is denied.

### D.    Count Two: Breach of Contract

Defendant moves to dismiss Count Two claiming the TPP is not a valid and enforceable contract obligating Saxon to offer Plaintiffs a permanent loan modification. (Def.'s Br. 17-27.) To allege a breach of contract, a plaintiff must plead: "(1) a valid contract, (2) breach of that contract, and (3) damages resulting from that breach." *AT & T Credit Corp. v. Zurich Data Corp.*, 37 F. Supp.

---

[2] At this stage in the proceedings, the Court does not find that Plaintiffs' allegations of ascertainable loss are an attempt to re-litigate their Saxon Modification. The Court, however, reminds Plaintiffs of the holdings contained in the Court's October 31, 2013 Memorandum Opinion and Order.

2d 367, 370 (D.N.J. 1999). Plaintiffs have sufficiently alleged a claim for breach of contract for Defendant's failure to offer Plaintiffs a permanent modification effective November 1, 2009.

First, the Amended Complaint sufficiently alleges an enforceable contract containing an offer, acceptance, and consideration. *Smith v. SBC Comm'ns Inc.*, 178 N.J. 265, 283 (2004). Plaintiffs allege in August 2009, they were offered the TPP, they entered into the TPP with Saxon, and Saxon countersigned and executed the TPP on August 13, 2009, as attorney-in-fact for Morgan Stanley. (Am. Compl. ¶¶ 10-11, 82, 94, 100). Courts analyzing similar TPPs and allegations have held the TPP is an enforceable contract. *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878, 883-84 (9th Cir. 2013); *Williams v. Saxon Mortg. Servs., Inc.*, No. 13-10817, 2014 WL 765055, at *12-15 (E.D. Mich. Feb. 26, 2014) (adopting report and recommendation); *Stagikas v. Saxon Mortg. Servs., Inc.*, No. 10-40164, 2013 WL 5373275, at *3 (D. Mass. Sept. 24, 2013); *Cave v. Saxon Mortg. Servs., Inc.*, No. 12-5366, 2013 WL 1915660, at *5-7 (E.D. Pa. May 9, 2013) ("*Cave II*").[3]

The Amended Complaint further alleges the Giordanos provided consideration, including providing extensive financial information outside of the requirements of Plaintiffs' original loan, making representations in a hardship affidavit, making payments to newly established escrow accounts, and agreeing to undergo credit counseling if Saxon requested. (*Id.* ¶¶ 12, 85, 90.) Plaintiffs' allegations meet the low threshold for consideration. *See Antkowiak v. TaxMasters*, 455 F. App'x 156, 161 n.9 (3d Cir. 2011) (only slightly more than a "mere peppercorn" is required for consideration);

---

[3] To demonstrate that the TPP did not create an obligation to modify the loan, Saxon relies on the language of a "cover letter" purportedly sent to Plaintiffs along with the TPP. (Def.'s Br. 20.) However, the Amended Complaint does not contain allegations regarding such correspondence and therefore, as previously noted, the Court declines to take judicial notice thereof. In addition, because this correspondence is not alleged in the Amended Complaint, the cases Defendants rely on are inapposite. *See Reitz v. Nationstar Mortg.*, 954 F. Supp. 870, 879, 885 (E.D. Mo. 2013) (analyzing language in TPP offer letter attached to plaintiff's complaint, among other things, to find that TPP was not an enforceable contract); *Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *11-12 (D.N.J. May 2, 2013) (finding that cover letter sent to plaintiffs indicated that TPP did not create an obligation to modify loan); *Stolba v. Wells Fargo & Co.*, No. 10-6014, 2011 WL 3444078 at *3 (D.N.J. Aug. 8, 2011) (dismissing breach of contract claim because TPP documents provided that plaintiffs "*may* qualify for a [HAMP TPP]").

*Oscar v. Simeonidis*, 352 N.J. Super. 476, 485 (App. Div. 2002) ("A very slight advantage to one party, or a trifling inconvenience to the other, is a sufficient consideration[.]") (citation and internal quotations omitted); *see also Wigod v. Wells Fargo Bank*, 673 F.3d 547, 564 (7th Cir. 2012) (finding consideration in plaintiff's agreement to "open new escrow accounts, to undergo credit counseling (if asked), and to provide and vouch for the truth of her financial information"); *Cave v. Saxon Mortg. Servs., Inc.*, No. 11-4586, 2012 WL 1957588, at *6 (E.D. Pa. May 30, 2012) ("*Cave I*") ("[T]he promise to undergo credit counseling upon request of Saxon constitutes consideration for Saxon's promise to provide Plaintiffs with a permanent loan modification or a timely denial."); *Gaudin v. Saxon Mortg. Servs.*, No. 11-1663, 2011 WL 5825144, at *4 (N.D. Cal. Nov. 17, 2011) (rejecting argument that "TPP was not supported by adequate consideration, given that Gaudin had a pre-existing legal obligation to make monthly loan payments").

Second, the Amended Complaint sufficiently alleges a material breach by Saxon. Although Plaintiffs complied with all of the terms of the TPP, including making all three trial payments and remaining qualified for a modification throughout the term of the TPP, Saxon breached the terms of the TPP by failing to offer Plaintiffs a permanent modification at the end of the trial period. (Am. Compl. ¶¶ 48-49, 51, 53, 55-56, 58-59, 85-91, 95, 101, 108). *See Corvello*, 728 F.3d at 883 ("The more natural and fair interpretation of the TPP is that the servicer must send a signed Modification Agreement offering to modify the loan once borrowers meet their end of the bargain."); *Wigod*, 673 F.3d at 563 (finding that bank's failure to send modification agreement to plaintiff was a breach, otherwise a "straightforward offer [would become] an illusion").[4]

Third, as a result of Saxon's breach, Plaintiffs suffer and continue to suffer damages, including increased interest payments, longer loan payoff times, deterrence from timely seeking other

---

[4] Because the Court concludes that the Amended Complaint alleges a valid breach of contract claim based on Saxon's failure to offer a permanent modification at the end of the trial period, the Court will not consider Plaintiffs' alternative argument, that Saxon breached the TPPs by failing to send Plaintiffs timely written denials, at this time.

remedies, damage to their credit, additional income tax liability, and costs and expenses incurred to modify their loan. (Am. Compl. ¶¶ 59, 92.) Plaintiffs have sufficiently alleged damages resulting from Saxon's breach. *See Wigod*, 673 F.3d at 575 (rejecting trial court's conclusion that plaintiff had not shown any pecuniary loss and pointing to the plaintiff's allegations that she "incurred costs and fees, lost other opportunities to save her home [and] suffered a negative impact to her credit."); *Cave II*, 2013 WL 1915660, at *8 ("If Saxon had provided Plaintiffs with permanent modifications, it is reasonable to infer that they would not have incurred, inter alia, increased principal, interest, and longer loan payoff times that accrued after the end of their trial periods, and may have sought other remedies to address their unaffordable mortgage payments.").[5]

Accordingly, Defendant's motion to dismiss Count Two is denied.

### E.      Count Three: Breach of Implied Covenant of Good Faith and Fair Dealing

Saxon asserts Count Three for a breach of the duty of good faith and fair dealing should be dismissed because the TPP is not an enforceable contract. (Def.'s Br. 17-27.) Having found, however, that Plaintiffs have stated a claim for breach of contract, the motion to dismiss Count Three is denied, without prejudice.

### F.      Count Four: Promissory Estoppel

The findings discussed above would likewise support a finding of promissory estoppel, since Plaintiffs relied to their detriment on the promise of permanent loan modification, only to learn that

---

[5] Defendant also contends that Count Two must be dismissed because Saxon is not a party to the TPP but, instead, an attorney-in-fact for Morgan Stanley. Although Plaintiffs did not directly respond to this argument, it has been considered and rejected in another case involving Saxon. *See Williams*, 2014 WL 765055, at *11 (rejecting Saxon's "non-party" argument and holding that plaintiff sufficiently alleged that Saxon was a proper party to the breach of contract claim where plaintiff brought suit against Saxon, alleged she entered into a written TPP with Saxon, Saxon signed the TPP, and Saxon sent her correspondence regarding the modification). The Giordanos' allegations are similar to the allegations in *Williams*. (Am. Compl. ¶¶ 10-11, 50, 52, 54, 82, 94, 100.) As in *Williams*, Plaintiffs sufficiently allege Saxon is a proper party to the breach of contract claim.

Saxon would not provide a permanent modification as promised in the TPP (Am. Compl. ¶¶ 52-58, 102-05, 107, 109). *See Wigod*, 673 F.3d at 566.

Accordingly, Defendant's motion to dismiss Count Four is denied, without prejudice.[6]

## IV.   Conclusion

For the reasons set forth above, and other good cause shown, it is hereby ordered that Defendant's Motion to Dismiss is denied. An Order will be entered consistent with this Opinion.

_/s/ Michael A. Shipp_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: September 29, 2014

---

[6] Plaintiffs filed their claim for promissory estoppel against Defendants, presumably, in the alternative to their breach of contract claim.